This matter is Patrick v. Great Valley. Good morning. My name is Reed Coppock and I represent Stephen Rosenberg in this matter. I'd like to reserve two minutes if I could for rebuttal. Let me start and maybe help me get over this huge hurdle I'm having. If we take this, all the intricacies that creep in here, under the state-created danger doctrine, and set them aside for a second. As I read the record, you both had experts testify, wrestling experts. Apparently, I Googled them, very accomplished wrestling experts on both sides. But the defense expert testified that the kind of move that's involved here, the one-legged takedown, is not weight-dependent, and that it was his opinion that the same injury could have occurred, absent the differences in weight. Your expert did not talk at all about that. He talked about how it's negligent beyond negligence. You can have a 245-pound kid wrestle a 145-pound kid. I'm still, my mind is boggled at how you get a 245-pounder in eighth grade, but I guess they're out there. He was there. So what do we do in terms of just causation? If there's no disputed material fact that what happened here is not weight-dependent, that the same injury could have occurred had there been the same weight, even if your client had been bigger than the other guy, how can you establish causation? Well, first of all, I can say that the problem that I have is that the defense expert, I don't believe, should even be considered at this point, because this was a summary judgment that we were thrown out on, and the record needs to be viewed in the light most favorable to my client, Stephen Rosenberg. Stephen didn't say that they were conducting or practicing these single-leg kubos, as the defense expert says. Stephen said that he was ordered by this head coach to live wrestle, which has a specific meaning in the wrestling community, as far as going all out as if you were in a match, attacking, being aggressive 100% of the time. It's like you're in a match. But does it matter? There's nothing to suggest that what he did during the course of this sparring match, I'll call it, if the technique that he used, the success of that technique, is not ultimately dependent on a weight differential, and that a smaller kid has as much likelihood of hurting a bigger kid as a bigger kid does of hurting a smaller kid. There's no dispute about that testimony. Don't get to the same place. Whether he was ordered to execute the kubo move or he was ordered to engage in live wrestling, does it matter? It does matter. I think that even though my expert says it doesn't matter, they shouldn't have been doing either practicing or actual live wrestling. My expert says that this decision to pit these two inexperienced wrestlers, who weighed 93 pounds difference, was, to use his words, it created an unnecessary risk of injury. So under the state-created danger rule, you either have to create it or you have to enhance it. And my argument would be this is for the jury to determine whether this created the danger or whether it enhanced it. Even if they were to believe that they were doing single leg kubos, if that increased... I don't think you're really answering Judge McKee's question. Okay, sure, maybe it enhanced the risk, but the question is the causation between the greater risk created and the injury. Now, what was the actual cause of the injury? The actual cause of the injury was the mispairing of these two wrestlers. That is the cause of the injury. That's much too broad. You could say the actual cause was they were wrestling or they were going to school. Well, of course, anybody can be injured in wrestling. That's not a question, but the question is here. Let's get down to what's the actual cause. The cause here is exactly what I said. It was the pairing of two wrestlers 93 pounds apart to live wrestle that day. You have to say it was the weight. It can't be true. It can't be true because it's uncontested that at least on some moves weight doesn't matter, right? But that's not where we're at at this point, Judge Tashima. We're at a point where we were thrown out on summary judgment. I'm not arguing with you on that. I'm just saying there's some moves in wrestling, it's uncontested, where weight does not matter. So the question is, you know, the move that caused the injury, what move was it? That's what you have to get down to, isn't it? Well, it was live wrestling is what it was. It was a single leg kubo that caused the injury. No, there's nothing in the record, Your Honor, that even says that they were doing a single leg kubo. We're not talking about some case. The record here is that he executed the big guy, C.P.A. I guess his initials are, executed a single leg takedown. In that, during the execution of that move, the injury occurred. That's according to the defense expert. And I would submit to you that there is nothing in the record to support his statement that they were doing a single leg kubo at the time. What is in the record as to exactly what they were doing and exactly what the, what do you have in the record as to what, as to how this happened and to tie it to weight? We have it in the record from Steven Rosenberg himself that he was ordered by this coach to live wrestle. Okay, but how did this, what do you have in the record as to exactly what happened that then connects it? It has to be a direct and foreseeable harm, the actuality. So what is it that happened here? How did it happen? How do we know that it was weight as compared to that Steven stubbed his toe as he was going down and it's his fault that it happened? Well, and Steven's, first of all, he shouldn't have been put in that position. I know that. I know that. But what happened to him has to be tied. If you're going to sue someone for it, you have to say that it was caused by what they did that was wrong. What they did that was wrong was linking them up. How do we know that that's what was, what caused the accident? Well, Steven's testimony in the case is that after he was told to live wrestle, he's live wrestling with this kid. And this kid basically picks him up and puts him on his back on the ground and falls with him down to the ground on top of his lower right leg and crushes it. So the expert that we have says that this was a dangerous coaching practice, pitting them, and that it, in fact, resulted in Steven getting injured. Just back up a second and get into something which is a little bit more esoteric than causation. I was surprised when I looked at the cases. I'm not sure that I found a direct answer to this, and maybe you can help me with it. But it seems that in all of our cases, knife is the best example. What makes it different than ordinary tort cases, not only the level of culpability, the shock to the conscience test, but the fact that there's some relationship between the state authority and the control, the sex officers. Knife being the best example is police officers. So that scenario would not have happened but for the state presence. Here, this could have happened in a private school, a parochial school. It could have happened in a backyard. What is there, maybe your argument is that there doesn't have to be that connection, but what is there to suggest that it's the involvement of the state here other than the fact that it was the teacher who happened to be in a public school? Well, that's exactly it. We have a teacher who's an employee of a public school, and therefore he's a state actor. And you think that's enough under the state creative danger doctrine? It's the use of the state authority that either creates a situation or exacerbates a situation. Right. He was appointed as head coach and left to make all the decisions about how to run his practices and his program. And so at that point, he is exercising the rights of the state to implement such a program. So he is a state actor, and I think that there should be no question about that. Well, he's a state actor. It seems to me that this substantially broadens the state action doctrine so that any time we get a tort case where there's a state actor involved, it becomes state creative danger. And that would be the result if he was in here. Wouldn't that be the result that any tort case where the person who caused the injury was either a state actor or acting pursuant to the directions of a state actor? We get state creative danger. Baseball practice in a public school. The coach orders the pitcher, put some heat on it. Show me your best stuff. Throw me your fastest ball. State creative danger is the ball without control hits the kid in the helmet. Well, it could create some additional cases of state creative danger. But the fact is that state creative danger theory has been around for close to 15 years now. Well, it has, but not in this context. It's been there like at night where you've got the exercise of traditionally the kind of police authority one would expect where the police were involved in a stop. And that's a very different kind of state involvement. It's something qualitatively beyond a tort. This is a tort in state action clothing. I could give you an example. The recent opinion from the Third Circuit, Sanford v. Stiles. In that case, it involved a guidance counselor at a high school who supposedly did not report the threat by a student to kill himself over losing his girlfriend. That's just another state actor. The decision wasn't based upon that particular point that the case was thrown. That's a good answer. I'm glad I could finally get one after 10 minutes standing up. We give everybody a tough time. I'm glad I prepared a whole speech. My point, though, is that the district court erred in this situation by finding that we had not created a record to show that there was a genuine issue of material fact as to whether or not this head coach's conduct was one that would shock the conscience using the deliberate indifference standard that I believe applies here. Again, in Sanford, this court laid out, had a nice review of whether or not it's an urgent situation, a police chase which would be intent to harm, whether it had some urgency which might be gross negligence. In this case, since he had time to deliberate and he even admits in his brief that he carefully paired wrestlers for practices. He was the only one left at that point. I guess he said he carefully paired his players for practices. But at this point, this is over the holidays and the big guy was the only one around to wrestle the little guy. Right. Well, I think it's the opposite way. My guy was the second heaviest guy at the practice. Your guy was the second heaviest? My guy was the second heaviest. That doesn't make it right because he was still 93 pounds lighter than him. But he happened to be the second heaviest guy. And that's why it shocked the conscience. The head coach admits here that what he did was he said that there was a big match coming up, a competitive match. I think it was a tournament. And he wanted to give everybody an opportunity to wrestle, to practice their moves and to live wrestle against everybody else. Well, he didn't care. He didn't talk about delivering a difference. He didn't care about Steven Rosenberg's health. All he cared about was giving Carmen, the big guy, an opportunity to wrestle against somebody. And Steven, as I said, just happened to be the second heaviest one. Well, the worst of all wages is also a concern for getting Steven. Well, Steven could have wrestled against somebody in his own weight class, though, or somebody even below him by a few pounds. But certainly, Steven wouldn't wrestle somebody 93 pounds less than him. That's the ridiculous situation here. And the problem is I find it difficult to believe that we did not create a record that showed that this – that at least it was a question, a fact for a jury as to whether or not this coach's decision to pair these two kids 93 pounds apart under these circumstances shocked the conscience and was deliberate indifference. Thank you. Good afternoon, Your Honors. Your first observation is probably that I'm not Cheryl Cavalli. My name is James D. Young. I represent the appellees. I did file a notice of appearance last week because Attorney Cavalli was unavailable. What is your name again? I'm sorry. James D. Young. Thank you. Judge McKee, I think you hit the nail on the head on your first question right out of the box in terms of causation. The summary judgment record is completely devoid of any evidence whatsoever showing that the weight of the individual wrestlers caused this accident. Well, I don't know. Mr. Chertow said that this was a dangerous coaching practice which resulted in Stephen getting injured. Now, in the state-created danger cases, for instance, in Sanford, we didn't have to find that the state pulled the trigger. And in Knight, we didn't have to find that the state went out and actually, you know, choked the woman in the gutter or did something. It's a state-created danger that creates a foreseeable – what happens is a foreseeable and direct result. But we don't need the exact actor causation, do we, in a state-created danger situation? No, you do not need the state actor inflicting the injury. Okay. In Sanford, I would point out, too, that the district court granted summary judgment under the circumstances with respect to the school counselor. And this court affirmed they granted summary judgment. But if you look at the fourth element of the – What's the one where the opinion a few months ago we failed to – Phillips? Yeah, Phillips. I mean, you have a situation here. You have the expert says that this practice resulted in Stephen getting injured. And don't we have to view the record in the light most favorable to the plaintiff here? Stephen's testimony on pages 41 and 42 of his deposition indicated that it was a takedown move and that the other – Carmen, the heavier wrestler, then accidentally landed on him doing that takedown move. Plaintiff's expert said it didn't matter whether they were drilling that move or whether they were actually live wrestling. Basically, all he says is it's improper to have two people – weight wrestle against one another. What their expert said simply was that in this case that it was improper, a negligence, carelessness under the circumstances standard. He said it's dangerous. I'm just reading from it. He said which resulted in Stephen getting injured. Your Honor, Judge Rendell, the last sentence of his expert opinion on page 75A of the record is, and while it's not uncommon in practice to wrestle or to drill against someone bigger, in my opinion, the particular weight disparity of more than 90 pounds in this case is certainly improper. Nowhere in his two-page report does he indicate that the weight disparity caused the injury. Well, I just read from it. I read a phrase. Maybe it's not much. Maybe he loses ultimately, but it's the second-to-last line in the second-to-last paragraph. He says which resulted in Stephen's injury. Mr. Kovach's argument is that summary judgment is a jury question. Maybe you're right. Maybe you're wrong. The jury should decide that. Well, we had come forward on summary judgment, supported our summary judgment with our expert opinion from the rest, or indicating that the weight in no way, that the disparity in no way had no causal connection. So we've got to battle the experts. Why isn't that a jury trial? It's undisputed. There's nothing in their expert report indicating that the weight, that the difference in weight caused this. To tell or allow Stephen, a very inexperienced beginner, weighing 152 pounds, to drill or to live wrestle against Carmen, weighing 245 pounds, was a dangerous coaching practice, which resulted in Stephen getting injured. As Judge McKee noted at the beginning of the argument, in our expert testimony, there was an indication that it didn't, that the size of the wrestlers themselves didn't, that this very same accident could have been caused, could have happened with wrestlers that were the same weight or even a wrestler that was of a lesser weight. But is that the point? I mean, is it, you know, the fact that the person, you know, the person was released by the police, well, she could have wandered off on her own and, you know, died just as easily. Is that really the test? If you look under the fourth element, the state actor uses authority to create a danger that otherwise would not have existed. Plaintiff's counsel was arguing that it's a situation where you've either created the danger or enhanced the danger. There's nothing in the record that indicates that in a takedown situation like this, which plaintiff himself admits was used. It's not the takedown. It's the practice of having someone who's 93 pounds less, weighs less, of carrying them. And there's a lot of evidence about safety and safety. And the reason they're only supposed to wrestle somebody in the other weight class is because of safety. Well, there must be some danger created by having someone eight weight classes apart. If you look at the second factor, there's got to be a willful disregard to the plaintiff's safety. And if you look at this, if you distinguish the facts of this case from the Sciato case relied on by the district court, there was a specific directive from the PIAA that you could not have college wrestlers come back and wrestle high school wrestlers. There were specific complaints about that practice. Well, but here there's no indication, there's no question at all that the reason for that, and there's a PIAA rule that you can only wrestle one weight class. And there was a 165-pound wrestler who was asterisked, does not wrestle, is not supposed to wrestle Carmen because of safety, because he's too little. Well, Your Honor, there's no PIAA rule regarding practice. There is in terms of live wrestling. But there's evidence here that they were live wrestling and that they've done it 10 to 15, they've been paired together live wrestling 10 to 15 times, his brother told me. Okay, if you look at the willfulness element of this, there's no, if you accept their testimony is true that they've previously done it, they've done it without any complaint, without any injury. Well, we have to give it up for their testimony, right? Well, and the undisputed testimony was in the record that in terms of safety precautions by the coach, he had worked every day in December with Carmen, the older kid, the heavier kid, that when he was practicing with or wrestling against lighter kids, he could not do certain things, which were lifting people up, using his weight to cause chronic injury. Well, that's depending upon a high school kid to, you know, to restrain, you know, himself. Is it his job to restrain himself or is it the coach's job to have a lightbulb go on and say, you know, I really shouldn't be doing this anymore, I'm tempting fate here and someday this guy's going to crush this. I guess they in eighth grade didn't even have a weight class he fits into? Yes, he wrestles in the 250-pound class. I was 140 pounds point center as a ninth grader, so it's hard for me to fathom somebody that size. I hate to interject real-life common sense experiences here, too. To the extent that there's an argument under Stanford and Phillips as to which of the three standards would apply, I coach fourth and fifth grade basketball. When the flu's going around and there's birthday parties or there's a spelling bee, it's not unusual that you get to practice at 6 o'clock and there's seven kids and, you know, three younger brothers. That doesn't mean you subject someone to the possibility of injury, does it? Well, I grab – and so in order to be able to scrimmage against, you know, 5-1-5 for practice, we grab third graders who by rules couldn't play any games with us, but by the same rules – there's nothing in the rules that says that they couldn't practice together. What, in baseball? Are you talking basketball or something like that? Basketball. I'm not talking about – I don't want to see you shred this tape. But of course you have coaching malpractice insurance, right? Yes, Your Honor. This whole claim goes back to a fundamental 14th Amendment principle that the 14th Amendment wasn't supposed to supplant state tort law principles. Well, but we have the state-created danger theory, and it is what it is. But now the exception is gobbling up the rules. I think you're right, and part of that is, you know, we have to look at the recklessness, right, the willful disregard. Give me your argument on that, why it doesn't fit. That factor is not met here. Well, in terms of willful disregard on that, the coach had taken safety precautions in terms of Carmen wrestling with other individuals. In terms of his instructions that day was that they were practicing a takedown move. The district court, I think, had it right in juxtaposing, in terms of the willful aspect of this, juxtaposing the facts of this case with this Fiato case, which is probably the closest factually to this. I don't see Seattle as bad as what happened here. Seattle, there's nothing to suggest. The only differential there was the physical maturity of the college kid and the experience of the college kid, but it looks like they were the same size and probably the same strength, and that was a problem. There was a specific directive on that, that they couldn't do what they were doing and the coach for that program was on notice from prior complaints about that. There was no rule prohibiting that. There was no rule there. In Seattle, there's certainly a rule. There's a rule that you cannot have PIAA high school wrestlers wrestling against college wrestlers. They were aware of that. They appeared to be the same size, same strength, difference in experience, and probably difference in maturity of the body, but probably the same weight. It appears to be about the same weight. It doesn't specifically say, which seems to me not as bad as putting 145-pound junior against 245-pound junior. Also on willfulness, you have the undisputed testimony in the record that this could happen with two individuals of the exact same age, weight, and experience wrestling. You could have the exact same injury. It could, but that doesn't mean the coach shouldn't exercise care and not mismatch his charges. It's almost common sense that one wrestler that weighs 90 pounds more than the other is a much greater danger of hurting than people of equal weight. That's the whole reason for weight classes, isn't it? This type of injury is inherent to wrestling. An individual could injure himself doing this. That really doesn't take us anywhere. Yes, they can, and that's why safety rules are required, and that's why they tell the parents that we'll be very conscious of safety. If we were in state court on a negligence claim, that may be true, but there's nothing here that the coach enhanced the risk of harm to the plaintiff. That was my question, and your colleague answered it very well, and that is that the state authority doesn't have to be used to. The state authority per se does not have to be the instrument of increasing the risk. It simply has to be present in terms of the next step, but it's not the state authority itself that is separate from the individual coaching that authority that creates the risk, and his example was a very good one. So here my concern was, well, geez, if you had that in a parochial school or a private school, you'd have the same scenario, but you wouldn't have a state of danger, and that's right. Most responses, well, that's right, but you don't have the state action. Here you've got the state action. Okay. In this case, if Steven had fallen on Carmen and broken Carmen's leg, is that a state-created danger violation? Does that fall within the exception, or are we just going to disregard the fact that the state-created danger exception is an exception to the general rule that this wasn't to supplant the state negligence, common law negligence claims, and case law that's been developed over the years? Here we're just having the entire exception just gobble up the general rule. The issue is not that it necessarily does. It's that to get past summary judgment, what do you have to show, and whether this does amount to deliberate indifference, in which event you look at the rules, you look at what people knew about, what people had been doing. No prior complaints, no prior injuries. A situation that the individual, if he was out there himself, this injury could have happened. And the young man did say, I'm not going to complain to the coach. You don't do that, and that's understandable, too. You don't tell the coach, I'm not going to wrestle against this guy. As a basketball coach, I have 20 different parents that second-guess everything I do in practice and things like that. In this day and age, certainly if the parent isn't there at practice, hears about when they get home, and you get the phone calls and the e-mails on that. I also just wanted to touch just briefly, and I know that my time is up, just on the— I'm sorry. If I may, just a couple of things. Mr. Young said that the PIAA regulations do not apply to practice, and I've never found anything that says that they do. But I would direct you to page 8 of the defendant's or the appellee's brief in this matter, where it's written that on behalf of Head Coach Brown, during the 2002-2003 wrestling season, the middle school wrestling coaches maintained an unwritten custom that live wrestling conducted during practice would be conducted in accordance with PIAA weight limitations. And I point that out just because I believe that while they may not apply in and of themselves, I believe that the coach here adopted those rules for his practice. Because under Monell, you've got to get a policy of custom to get the liability. It may not hurt you vis-à-vis the coach, but it hurts you against the school just because you don't have the policy of custom. Well, he's admitting here that he complied or intended to comply with the PIAA weight regulations, which I believe just goes to show about the deliberate indifference as far as he's aware that wrestling is a sport. He admits in his answer to the complaint that he was aware of the risks associated with wrestlers of significantly different weight levels live wrestling against one another in practice. He was aware of all these risks. It helps you with the coach, but again, you've got to suit against the school district as well, and things like the superintendents and other people in the supervisory authority. You need Monell to get to them. How do you satisfy that? How do you satisfy Monell? Well, the problem that I had with the district court's opinion was that the district court just overlooked completely the testimony of the head coach when he said that he was hired in 1996 and that he had occasion on each and every year to pair wrestlers of significantly different weight classes. But is he sufficient? Don't you need somebody above him? Well, that's the difficult issue, and my point is this. The school district here is like a large company. The board of directors can't make every decision in the company. We have cases that clearly say when you're talking about a school district, it's the superintendent of the schools and the people on the board of education, but it's not the teachers. Unless the authority to create custom or policy has been delegated, and my point here is that that's exactly what happened. You have a school district. The school board can't make every decision, so they have to delegate some authority to people. They're right on the record with supporting you in your argument that they've delegated authority to the conduct of practices to the coach. Well, I think that they delegated it because they hired him without any rules and regulations in place to govern him, and as the principal said and the athletic director of the middle school said, everything was left to this coach. It was all his decision as to how practices were run, how meets were conducted. It was up to him, and so I'm not sure what else you can possibly say as far as delegation. If you hire somebody to do a job and then you bury your head in the sand, you don't want to know what they're doing, you don't want to give them any rules and guides, you don't want to check up on them at all. How in the world can you possibly, why should you be able to avoid liability in that situation? You've delegated that responsibility to somebody. I believe the record shows that that's what happened here. Okay, Mr. Caput, thank you. Okay, thank you. This is very well argued, and I'll take the matter into advisement. Our final case is...